Ho v Visa U.S.A. (2004 NY Slip Op 50415(U))

[*1]

Ho v Visa U.S.A.

2004 NY Slip Op 50415(U)

Decided on April 21, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 21, 2004

Supreme Court, New York County
 SIOLEN KELLY HO, BARBARA HALL and VIRGINIA TORRES, on behalf of themselves and all other consumers similarly affected, Plaintiffs,
against
VISA U.S.A. INC. and MASTERCARD INTERNATIONAL, INC., Defendants.
Index No. 112316/00

Bernard J. Fried, J.
Defendants Visa U.S.A. Inc. (Visa) and MasterCard International, Inc. (MasterCard) move, pursuant to 3211 (a) (7) and 3211 (a) (1), to dismiss the amended complaint.
Plaintiffs Siolen Kelly Ho, Barbara Hall, and Virginia Torres seek to sue on their own behalf and on behalf of all similarly situated consumers. Plaintiffs allege that they are consumers at stores such as The Express, Victoria's Secret, Sears Roebuck Co., Macy's, and Bloomingdale's, all of which are part of the International Mass Retail Association (IMRA) and the National Retail Federation (NRF). Plaintiffs allege that those stores, along with more than three million retail establishments, accept Visa and MasterCard credit cards as a form of payment. Plaintiffs further allege that, although the acceptance of Visa and MasterCard credit cards is voluntary, the retailers are forced to accept Visa and MasterCard debit cards as a condition of being able to accept the more all-encompassing credit cards. According to plaintiffs, Visa and MasterCard charge the retailers more, per transaction, when a debit card is used by a customer, than when a credit card is used. According to plaintiffs, the retail stores pass on the increased charge to consumers, such as themselves, by raising the price of the products that they sell.
In 1996, several groups of retailers filed anti-trust actions in federal court challenging these practices of Visa and MasterCard. In 2003, that litigation resulted in a settlement involving the payment of damages of over $3 billion, and injunctive relief worth an additional $25 to $87 billion.(In re Visa Check/Mastermoney Antitrust Litigation, 297 F Supp 2d 503 [EDNY 2003]).
Plaintiffs' amended complaint asserts two causes of action. In their first cause of action, plaintiffs allege violations of the Donnelly Act (General Business Law § 340), New York State's version of the federal Sherman Anti-Trust Act. 5 USC §1 et seq. In their second cause of action, plaintiffs allege violations of General Business Law § 349, which makes unlawful deceptive acts and practices in the conduct of business.
Citing Cox v Microsoft Corp. (290 AD2d 206 [1st Dept 2002]), defendants contend that [*2]plaintiffs' Donnelly Act cause of action must be dismissed, because the Act's treble damages remedy precludes private persons from bringing a class action under the act. See CPLR 901 (b) (unless a statute which imposes a penalty specifically provides that an action to recover the penalty may be brought as a class action, such a class action is precluded).
In response, plaintiffs offer to abandon their class action claims for Donnelly Act violations, and agree to further amend their complaint, if so required.
However, defendants argue that, even if plaintiffs abandon their class action claims, the first cause of action must be dismissed. Defendants contend that plaintiffs lack standing because their alleged injuries are too remote.
In the case of Illinois Brick Co. v Illinois, (431 US 720 [1977]), the United States Supreme Court held that purchasers of concrete blocks, who had paid enhanced prices for their purchases because their suppliers had been victimized by a price fixing conspiracy, could not bring a federal anti-trust action because they were indirect purchasers. In 1999, the New York State Legislature amended the Donnelly Act to provide that persons who had been damaged as a result of a violation of the Donnelly Act would not be deprived of standing to sue, merely because they did not deal directly with the defendant. (Gen. Bus. L. § 340 ([6]). Defendants contend that plaintiffs' injuries are too remote to qualify them as "indirect purchasers" under the Donnelly Act amendment.
Defendants argue that the proximate cause analysis utilized by the United States Supreme Court in Associated General Contractors of California, Inc. v California State Council of Carpenters, (459 US 519 [1983]), to determine whether antitrust standing is proper under state laws similar to New York's, should be used here. That analysis, which was recently summarized by the United States District Court for the District of Columbia in In re Lorazepam & Clorazepate Antitrust Litigation, (295 F Supp 2d 30, 37 [DDC 2003]), considered the following five factors in determining whether a plaintiff is a proper party to bring an antitrust case:

1. The nature of plaintiff's claimed injury;
2. The directness of the injury;
3. The specific intent of the alleged defendants;
4. The character of the alleged damages, including the risk of duplicative recovery, the complexity of apportionment and their speculative nature; and
5. The existence of other, more appropriate plaintiffs.
Here, the plaintiffs' claims, as general consumers at stores which accept Visa and MasterCard, are clearly derivative of the stores' claims against those companies, and their alleged injuries are indirect. They have had no direct dealings with either of the defendants; they do not claim to use defendants' credit or debit card services in any way. Rather, they claim that stores where they shop raise their prices on all products in order to absorb the extra fees charged by [*3]Visa and MasterCard, and that they pay higher prices as a result. Thus, plaintiffs' claims are far more indirect than those in cases challenging the tobacco industry, on which plaintiffs rely, where the plaintiffs are cigarette smokers who actually purchased the defendants' product, though not directly from defendants. (See e.g. Lennon v Philip Morris Companies, Inc., 189 Misc 2d 577 [Sup Ct, NY County [Ramos, J.] 2001]).
With respect to intent, in the Lorazepam case, on which plaintiffs here rely, those plaintiffs claimed that they were injured because they had to pay excessive prices for certain drugs. As the Lorazepam court noted, the aim of the manufacturers' preclusive conduct was to charge the elevated prices of which the plaintiffs complained. Here, in contrast, though Visa and MasterCard presumably intended to obtain higher rates from the stores that accepted their cards, there is no indication that they intended that the prices of all consumer goods in those stores would be increased.
With respect to the character and calculation of damages, and the complexity of calculating those damages, plaintiffs allege that the stores where they shop, such as The Express, Victoria's Secret, Sears Roebuck Co., Macy's, and Bloomingdale's, have absorbed the debit card fees by raising their prices. In their amended complaint, plaintiffs note that those stores are part of the IMRA and NRF, which, along with more than three million retail establishments, accept Visa and MasterCard credit and debit cards. Even assuming that plaintiffs' class action claims have been abandoned with respect to their Donnelly Act cause of action, their amended complaint appears to cover all of the purchases that they made as individual consumers at any retail store that accepts Visa and MasterCard, not merely at the handful of named stores - purchases which potentially range from a few cents to hundreds, or even thousands, of dollars. The complexity and speculative nature of plaintiffs' claims are overwhelming. 
Moreover, any recovery obtained by plaintiffs here is likely to be duplicative, in light of the fact that the retailers have already brought and resolved their claims with respect to the debit cards, and have obtained a multi-billion dollar settlement. Therefore, this is obviously not a situation where the antitrust violators will go unpunished, because the parties who are directly injured will not sue.
For these reasons, I conclude that plaintiffs' alleged injury is far too remote to provide antitrust standing under the Donnelly Act, and the first cause of action must be dismissed.
Plaintiffs' second cause of action alleges that defendants violated General Business Law (GBL) § 349 by engaging "in a wide and far-reaching advertising campaign" to induce consumers to acquire debit cards without disclosing that the merchants are being charged high fixed prices for accepting the cards, which costs the retailers are compelled to pass on to all of their consumers.
Defendants argue that the second cause of action should be dismissed, because, like the Donnelly Act, Section 349 provides for treble damages, and therefore, a class action is [*4]impermissible. Under the Donnelly Act, any person who sustains damages by reason of a violation of the act "shall recover three-fold the actual damages." (Gen. Bus. L. § 340 [5]). In contrast, pursuant to section 349, plaintiffs may seek merely their actual damages or $50, whichever is greater, the imposition of treble damages being discretionary with the court. Gen. Bus. L. § 349 [h]). Plaintiffs indicate that they are willing to waive the possibility of treble damages, but seek to maintain their class action claims under section 349. As plaintiffs contend, class actions have been sustained under section 349, where plaintiffs have agreed to waive treble damages relief (see Super Glue Corp. v Avis Rent A Car System, Inc., 132 AD2d 604 [2nd Dept 1987]), and where class members were permitted to opt-out, if they wished to seek treble damages. (See Ridge Meadows Homeowners' Assn., Inc. v Tara Development Co., Inc., 242 AD2d 947 [4th Dept 1997]). Thus the availability of treble damages does not preclude plaintiffs' second cause of action.
 Defendants contend that, nonetheless, plaintiffs fail to satisfy the three elements of a section 349 claim: "that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." (Stutman v Chemical Bank, 95 NY2d 24, 29 [2000]). Defendants contend that no misleading practice has been alleged by plaintiffs - that nothing in defendants' advertising even discussed fees paid by merchants for credit and debit cards, and that, in any case, the information regarding those cards, with their differing fees, was public knowledge. And again, defendants argue that the alleged injuries suffered by plaintiffs are far too remote and speculative to state a claim under GBL § 349.
As defendants contend, New York courts have held that mere failure to disclose that lower rates for certain services were available, does not necessarily constitute a deceptive practice under Section 349. (See e.g. Gershon v Hertz Corp., 215 AD2d 202 [1st Dept 1995]) [alternative car rental arrangements at lower rates]; see also Super Glue Corp. v Avis Rent A Car System, Inc., 159 AD2d 68 [2nd Dept 1990] [excessive prices charged for insurance or refueling, without more, are not actionable as deceptive practice]).
Citing State of New York v Feldman , (210 F Supp 2d 294 [SDNY 2002]), plaintiffs contend that there can be a violation of Section 349 without an affirmative misrepresentation. However, Feldman did not involve claims of deceptive advertising. Rather, in Feldman, several States brought an antitrust enforcement action against a group of people allegedly involved in an unlawful scheme to rig bids at stamp auctions. Plaintiffs' second cause of action specifically alleges that it is based on a widespread campaign of advertising by defendants, although no specific advertisements are cited, and plaintiffs fail to demonstrate anything specific in defendants' advertisements which was misleading. To the extent that plaintiffs' allegations regarding deceptive practices are based on defendants' alleged massive advertising campaign, Feldman is of little assistance to them, and their second cause of action fails to state a claim. Therefore, it is not necessary to reach defendants' contention that information about their pricing structure was publicly known.
[*5]
In their brief and in oral argument, plaintiffs appear to have reformulated their second cause of action as a general antitrust claim, like the claims of the New York State Attorney General in Feldman, and not unlike their Donnelly Act claim in the first cause of action. In Feldman, the court noted that New York courts have interpreted Section 349 as encompassing deceptive practices prohibited by the Federal Trade Commission Act, and that the government may use the FTC Act to enforce antitrust laws. Plaintiffs argue that Section 349 can be used to enforce general claims of deceptive practices where antitrust laws have been violated, and that defendants' debit card practices have already been held to violate antitrust laws. 
Although plaintiffs' amended complaint does not assert such a general antitrust claim pursuant to Section 349, on a motion to dismiss, it is appropriate for the court to consider not merely whether the complaint has stated a particular cause of action, but whether, on the facts alleged, a cause of action exists. Therefore, I will consider whether plaintiffs can state a claim under Section 349 that is not limited to a claim for deceptive advertising.
Defendants contend that if plaintiffs seek to utilize section 349 as a general antitrust statute, the analysis used to determine standing for Donnelly Act claims should be used to determine standing under section 349, as well.
Plaintiffs cite Securitron Magnalock Corp. v Schnabolk, (65 F3d 256, 264 [2nd Cir 1995] [citations omitted]) for the proposition that "'any person who has been injured by reason of any violation of this section'" can maintain a cause of action under section 349, and argue that, because they have been injured by defendants' actions, they have standing. However, the court in Securitron merely held that suits under section 349 were not limited to consumers, and that corporate competitors have standing to sue as well, so long as the underlying conduct results in some harm to consumers, or to the public at large. That case did not consider the question of the remoteness of the injury - which is at issue here.
Recently, in a case in which health insurers sought to recover, from tobacco companies, the increased costs of medical services due to smoking, the United States Court of Appeals for the Second Circuit considered whether there may be a remoteness bar to standing under Section 349. (Blue Cross and Blue Shield of New Jersey, Inc. v Philip Morris USA Inc., 344 F3d 211 [2nd Cir 2003]). Noting that a New York court has permitted a suit for indirect injuries under Section 349, the U.S. Court certified the following question to the New York Court of Appeals: "Are claims by a third party payer of health care costs seeking to recover costs of services provided to subscribers as a result of those subscribers being harmed by a defendant's or defendants' violation of N.Y. Gen. Bus. Law § 349 too remote to permit suit under that statute?" Id. at 221. The Court of Appeals has accepted the certified question. (Blue Cross and Blue Shield of New Jersey, Inc. v Philip Morris USA Inc., 100 NY2d 636 [2003]).
At least until the Court of Appeals determines that a different type of analysis should be utilized to determine standing under Section 349, I conclude that an analysis akin to that utilized for Donnelly Act standing is appropriate. Utilizing that analysis, I further conclude that, even if the Court of Appeals determines that third-party payers of health care costs have standing to sue [*6]tobacco companies under section 349, for the reasons discussed above, plaintiffs' alleged claims are too remote to support a general antitrust claim under Section 349. Furthermore, if plaintiffs were permitted to bring their section 349 claims as a class action, as they seek to, the complexity and speculative nature of calculating damages would increase geometrically, for those claims could involve nearly all the purchases of all of the consumers in the state of New York.
Accordingly, it is hereby
ORDERED that defendants' motion to dismiss is granted, and the complaint is dismissed with costs and disbursements to defendants as taxed by the Clerk of the Court on submission of an appropriate bill of costs; and it is further
ORDERED that the Clerk is directed to enter judgment accordingly.
DATED:
ENTER:
 J.S.C.
Decision Date: April 21, 2004